# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHARLTON L. WILSON, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) | Case No. CV413-269 |
| MARTY ALLEN, Warden, | ) ) ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Charlton L. Wilson petitions this Court for habeas relief under 28 U.S.C. § 2254. Doc. 1. The respondent opposes. Doc. 10.

## I. BACKROUND

A jury convicted Wilson of burglary, armed robbery, possession of a firearm during the commission of a felony, and kidnapping. The trial court denied his new trial motion, but on appeal he successfully argued, *inter alia*, that the kidnapping evidence was insufficient. *Wilson v. State*, 318 Ga. App. 37, 37 (2012). Yet, while still represented by counsel, he raised nothing beyond kidnapping-count claims. Doc. 10-1 at 2. Before a state habeas court (now proceeding *pro* se) he unsuccessfully raised

ineffective assistance of counsel plus Fourth and Fifth Amendment claims. Doc. 7-3, *review denied*, doc. 7-5. Still proceeding *pro se*, he renews those claims here. Doc. 1 at 6. They must be assessed against the trial evidence showing that Wilson

> and his accomplices, Charles Washington and Yauncy Daise, developed a plan to burglarize the victim's residence in Chatham County, believing that drugs and money were present inside the residence. For approximately one week prior to the incident, Wilson and his accomplices secretly observed the residence during the morning hours to determine the victim's routine and the times that she left the residence.
>
> On the morning of April 23, 2007, Wilson and Daise made the unauthorized entry into the victim's residence, while Washington remained outside to serve as a lookout. Although no one was inside the residence when Wilson and Daise made entry, the victim unexpectedly returned to the residence while the burglary was in progress. When the victim entered the residence, Wilson approached her, pointed a gun in her face, and forced her to lie on the floor. Wilson then tied the victim's arms and legs, and covered her eyes with duct tape. Wilson threatened to kill the victim, and demanded that she tell them where the purported drugs and money were hidden. Daise kept watch over the victim, while Wilson ransacked the residence. Although Wilson was unable to find any drugs and money, he stole the victim's credit cards, debit cards, and identification cards from her purse.
>
> Upon stealing the victim's property, Wilson and his accomplices fled from the residence and drove away in Wilson's car. The victim removed the duct tape and ran to a neighbor's house to call police. The victim's neighbor gave the responding officers a description of Wilson's car, which she had previously observed parked near the

victim's residence at the time of the incident and on the prior mornings when Wilson and his accomplices had been observing the residence.

Shortly thereafter, officers stopped Wilson's car, which matched the description conveyed on the dispatch lookout call. Wilson was driving the car, and Washington and Daise were passengers. Following the stop, the officers recovered the victim's stolen property from Wilson's car. In addition, the officers recovered a roll of duct tape; a gun; cigars that the victim had reportedly smelled during the incident; bandanas; shoes; and clothing that Wilson and Daise wore during the incident.

Wilson and his accomplices were arrested and jointly charged with multiple crimes based upon the incident. After being advised of his *Miranda* rights, Wilson agreed to an interview with the detectives. Although Wilson initially denied being at the victim's residence, he later admitted that he had participated in the burglary. Wilson, however, denied that he had a gun and had committed the armed robbery.

Wilson's co-defendant, Daise[,] testified as a witness for the State at trial. Daise's testimony conveyed details regarding Wilson's participation in the planning and execution of the crimes against the victim. At the conclusion of the trial, the jury returned a verdict finding Wilson guilty of the charged crimes.

*Wilson*, 318 Ga. App at 38-39.

## II. WILSON'S CLAIMS

Wilson's § 2254 petition presents his own version of the trial evidence, emphasizing that the victim never did "see any vehicles which were present and driven by either of the two unknown assailants on that

3

date and time." Doc. 1 at 15. He acknowledges that her *neighbor* saw and described the car that the police later spotted and stopped, but he insists she described a Dodge *Intrepid* with three black males, not what the police dispatch described: a Dodge *Stratus* with *four* black males. *Id.* at 22-23. He also complains that his confession was unconstitutionally obtained. It is in that light that he raises three claims, renumbered here for convenience:

   1. Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

   2. Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

   3. Denial of effective assi[stance] of counsel [(IAC)].

*Id.* at 18.

## III. GOVERNING STANDARDS

Where claims are not raised on direct appeal, the federal procedural default doctrine, asserted by the state here, doc. 10-1 at 6-11, presumptively bars federal habeas review.[1] Habeas petitioners can show

---

[1] As the Eleventh Circuit explains:

> procedural default may bar a district court from reviewing a petitioner's claim if a state court rejected it on a state procedural ground. *Judd v. Haley*, 250

4

cause to overcome that default with an ineffective assistance of counsel (IAC) claim. *See supra* n. 1. But they must plead and prove a violation of the Sixth Amendment standard for effective assistance as established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Anderson v. Sect'y, Fla. Dep't of Corr.*, ___ F.3d ___, 2014 WL 1877439 at * 10 (11th Cir. May 12, 2014). Hence, they must show that counsel's performance was deficient and that it prejudiced their defense. *Strickland*, 466 U.S. at 687.

But judicial assessment of counsel's performance must be highly deferential, without hindsight, and premised on a strong presumption that counsel made all significant decisions while exercising reasonable

---

F.3d 1308, 1313 (11th Cir. 2001). The state procedural ruling ordinarily provides an "adequate and independent" ground to deny relief under state law, which bars federal review of the underlying claim. *See Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995). But if a claim is procedurally defaulted, a federal court may still address the merits of the claim if the petitioner establishes cause for the default and actual prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S. Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). To establish cause, the petitioner must identify "some objective factor external to the defense" that impeded his ability to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). We have determined that a claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause. *See Hill v. Jones*, 81 F.3d 1015, 1031 (11th Cir. 1996).

*Henry v. Warden, Georgia Diagnostic Prison*, ___ F.3d ___, 2014 WL 1717007 at * 3 (11th Cir. May 2, 2014).

professional judgment. *Anderson*, 2014 WL 1877439 at * 17. The "burden of establishing that [a] lawyer's deficient performance prejudiced [the petitioner's] case is also high." *Id.* at * 17 (quotes and cite omitted). It is not enough to show that "the erro[r] had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. It must impact the trial or appellate process by "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A second layer of judicial deference applies here. This Court must review Wilson's underlying and IAC claims "claims through the lens provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')." *Anderson*, 2014 WL 1877439 at * 10. A state habeas court's rulings cannot be disturbed unless they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A State court decision involves an unreasonable application of a Supreme Court holding if the State court correctly identifies the holding but unreasonably applies it to the facts of the prisoner's case." *Anderson*, 2014 WL 1877439 at *15. "An unreasonable application of a Supreme Court holding is different from an incorrect application of a Supreme Court holding." *Id.* at * 16 (citing *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 785 (2011)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. Federal habeas relief is denied so long "as some fairminded jurists could agree with the state court's decision, although others might disagree." *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014) (quotes and cite omitted). "Thus, it is a rare case in which a petitioner obtains federal habeas relief on an ineffective assistance of counsel claim that the state court denied on the merits." *Id.* at 1262 (quotes and cite omitted).

## III. ANALYSIS

On his IAC claim Wilson faults his trial and appellate counsel for not litigating a Fourth Amendment claim arising from his automobile

stop. Doc. 1 at 20-23. The police, he contends, had no cause to issue a "Be On the Lookout" (BOLO) for the Dodge passenger car in which he and his accomplices were caught soon after committing their crimes. Put another way, no reasonable suspicion supported the BOLO's issuance, and thus the ensuing stop of his car. Petitioner illuminates the neighbor witness' description of a Dodge *Intrepid* with *three* black males, while the BOLO was put out for a Dodge *Stratus* with *four* black males. He also points out that his car was over 20 miles from the crime scene when stopped, and no plate number or description of the black males had been provided. Doc. 1 at 21-23. In his view, then, there was no probable cause to stop him, all of the fruits from that tree are poisoned, and his lawyer was ineffective. *Id.*

The state habeas court denied this IAC claim on the merits. Doc. 7-3 at 5-8. The BOLO claim was determined to be so lacking in merit that counsel was not ineffective for failing to raise it. *Id.* Rather than show unreasonableness under the double-deference standard, Wilson at best nitpicks the neighbor witness' "Dodge" description to the police. Of course, perfect recall is not required of identification witnesses, nor

perfect transmission of their recollection to street patrols who then run suspects down and arrest them. *Smith v. Sheriff, Clay Cnty., Fla.*, 506 F. App'x 894, 898-900 (11th Cir. 2013). All that need be shown is information "trustworthy enough that a reasonably prudent person would rely on it in forming a belief about the suspect's conduct." *Robinson v. Cook*, 706 F.3d 25, 34 (1st Cir. 2013). Thus, a suppression motion here would have gone nowhere, and many competent lawyers would not have bothered to challenge the vehicle stop on that basis. And again, Wilson ignores the co-defendant confession factor here. In sum, he comes nowhere close to piercing the double-deference standard set forth above.

Wilson also advances a "confession-based" IAC claim. The state court reached this on the merits, too. Doc. 7-3 at 2-8. A police officer testified that Wilson contacted him from jail, the officer visited him, and Wilson then confessed. Wilson says he never contacted the officer, so his lawyer was ineffective for failing to object to that testimony. Counsel also should have subpoenaed "phone records from the county jail," doc. 1 at 19, and both trial and appellate counsel failed to litigate presumably a

Fourth/Fifth Amendment claim (Wilson doesn't say) and have his "statements ruled part of the illegal stop, search and arrest." *Id.* at 20; *see also id.* at 29 (detective's report showing that Wilson contacted him and, per Wilson's invitation, detective re-interviewed him). This claim also fails outright. Again, Wilson simply *ignores* the fact that, even had trial counsel succeeded in suppressing that evidence, his co-defendant would have implicated him and that confession would have been admissible at trial. Doc. 7-3 at 7-8 (state court ruling). There is thus nothing unreasonable about the state court's ruling that counsel's judgment -- not raising this claim at trial or on appeal -- fell within the effective assistance range.

Finally, Wilson raised his "BOLO" claim as an independent ground before the state habeas court, which ruled that it was procedurally defaulted under state law. Doc. 7-3 at 8-9. He again raises it here. Doc. 1 at 6, 20-23. Even were that procedural default overlooked, this claim would fail on the merits for the reasons stated above.

## IV. CONCLUSION

Charlton L. Wilson § 2254 petition (doc. 1) must be **DISMISSED**

**WITH PREJUDICE**. Applying the Certificate of Appealability (COA) standards, the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 1st day of July, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA